**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DENICE WEST,

        Plaintiff,                            Case No. 1:11-cv-547

v.                                           Dlott, J.
                                              Bowman, M.J.

FIFTH THIRD CORP. *et al*,

        Defendants.

## REPORT AND RECOMMENDATION[1]

Plaintiff, proceeding *pro se*, filed a complaint alleging that Defendants unlawfully discriminated and retaliated against her on the basis of her race, sex and alleged disability. This matter is now before the Court on Defendants' motions for summary judgment (Docs. 44, 47); Defendants' proposed undisputed facts with supporting attachments (Docs. 45, 48, 49); and Plaintiff's responsive memorandum. (Doc. 54). Defendants' motions for summary judgment have been referred to the undersigned for initial consideration and a report and recommendation. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, I now recommend that the Defendants' motions for summary judgment be GRANTED.

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

**I. Background**

**A. Relevant Facts[2]**

AlliedBarton is a nationwide organization that provides security services pursuant to the terms of individual contracts negotiated with customers. (Doc. 49, Ex. 5, Turner Aff. ¶ 1.) The principal service provided to customers includes the placement of Security Officers at the customer's place of business. *Id.* Generally, Security Officers placed at customer sites have responsibility for protecting the customer's assets by patrolling the customer's premises, monitoring doors, gates, alarms and cameras, maintaining control over areas of ingress and egress, and providing assistance to patrons or tenants of buildings to which they are assigned. *Id.*

AlliedBarton has a contract with Fifth Third Bank pursuant to which AlliedBarton provides security services at six (6) different Fifth Third Bank locations in the Cincinnati, Ohio area, including the Fifth Third Bank facility located in Madisonville, Ohio (the "Madisonville Facility"). *Id.* at ¶ 3. Vance Turner is the National Account Manager for the Fifth Third Bank account. *Id.* As the National Account Manager, Turner is responsible for overseeing the security operations at all of the Fifth Third Bank locations, including the Madisonville Facility. *Id.*

Plaintiff began working for AlliedBarton in July 2006.[3] (Doc. 43, Deposition of Plaintiff Denise West at 64:9-65:1.). From July 2006 until her termination, Plaintiff

---

[2] Plaintiff did not file any affidavits or other evidence as outlined in Fed. R. Civ. P 56(c) in opposition to Defendant's motion for summary judgment. The undisputed facts outlined above are taken directly from the allegations in Plaintiff's complaint and the proposed undisputed facts filed by Defendant Allied Barton. (Docs. 1, 49).

worked at the Fifth Third Bank facility in Madisonville, Ohio. *Id.* at 67:13-68:8. At the time of her termination, Plaintiff was working as a Cart Patrol Officer. Id. at 75:3-12.

As a Cart Patrol Officer, Plaintiff was required to perform a full patrol of the perimeter of the Madisonville Facility every hour. *Id.* at 75:13-17; 81:17-21. (*See also* Doc. 49, Ex. 2, Bolender Aff. at ¶ 4; Doc. 49, Ex. 4, Powell Aff. at ¶ 4.) The purpose of the cart patrol is to both detect suspicious activity and provide a visible deterrent to crime. (See Bolender Aff. at ¶ 4; Powell Aff. at ¶ 4.)

A full cart patrol of the Madisonville Facility should take approximately 30 minutes to complete. Id. All Security Officers at the Madisonville Facility, including the Cart Patrol Officer, are required to complete a Daily Activity Report ("DAR") during each shift. (Doc. 43 at 100:16-20). A DAR is a form on which each Security Officer is required to record his or her activities during their shift. (Doc. 43. at 100:21-24; Bolender Aff. at ¶ 5; Powell Aff. at ¶ 5.). The DAR's for the Madisonville Facility are provided to Fifth Third Bank as an official record of the activities of the Security Officers at the site. (Doc. 43 at 101:16-24; Bolender Aff.. at ¶ 5; Powell Aff. at ¶ 5.)

AlliedBarton employs Shift Supervisors at the Madisonville Facility who are responsible for making sure that the Security Officers assigned to the facility are performing their duties. (Bolender Aff. at ¶ 5; Powell Aff. at ¶ 3.). The Madisonville Facility maintains a video surveillance system. (Bolender Aff. at ¶ 7; Powell Aff. at ¶ 6.).

---

[3] Fifth Third never employed Plaintiff. (Doc. 43 at 66-68, 301-317; Mahon Aff. ¶¶10-14). No employees of Fifth Third had anything to do with the terms and conditions of West's employment with AlliedBarton. (West Dep. 66-68, 301-317; Mahon Aff. ¶¶10-14). At all times relevant to this lawsuit, Plaintiff was employed by AlliedBarton and AlliedBarton controlled the terms and conditions of her employment during that period. (West Dep. 66-68, 301-317; Mahon Aff. ¶¶10-14).

3

The video surveillance system belongs to Fifth Third Bank but is monitored by AlliedBarton employees. *Id.*

On May 4-5, 2011, Plaintiff worked the third shift from 10:00 p.m. to 6:00 a.m. as the Cart Patrol Officer for the Madisonville Facility. (Doc. 43 at 157:21-24). Plaintiff was not assigned any other duties during that shift other than Cart Patrol. *Id.* at 195:6-14. Prior to May 4, 2011, Shift Supervisor William Powell spoke with Plaintiff regarding her Cart Patrol duties. (Powell Aff. at ¶ 8.). During that discussion, Powell made it clear to Plaintiff that, unless he specifically told her otherwise, it was AlliedBarton's expectation that she conduct a full patrol of the perimeter of the Madisonville Facility during each hour of her shift. *Id.*

Powell also explained to Plaintiff that a full patrol should take at least 30 minutes to complete. *Id.* Plaintiff completed a DAR for her shift on May 4-5, 2011. (Doc. at 157:21-24). During Plaintiff's shift on May 4-5, 2011, Powell noticed that the patrol cart was parked at the loading dock for the Madisonville Facility for extended periods of time. (Powell Aff. at ¶ 9.)  The loading dock for the Madisonville Facility can be seen on the security camera system for the Madisonville Facility. *Id.* Powell then checked the video footage for the security camera system and observed when the patrol cart was parked at the loading dock and when it was out on patrol. (See Powell Aff. at ¶ 10.) Powell also wrote down the beginning and ending times of each patrol that Plaintiff performed. *Id.*

Based on his observations, Powell calculated that Plaintiff spent only 67 minutes of her 8-hour shift on patrol. *Id.* After watching the video footage, Powell obtained a

copy of Plaintiff's DAR for the shift and compared the patrols listed in the DAR with the patrols he observed on the video. (Powell Aff. at ¶ 11.)  The patrols Plaintiff claimed to have performed in her DAR did not match the patrols Powell observed on the video.  *Id.*  Powell then prepared an e-mail regarding his findings and sent it to his direct supervisor, Madisonville Facility Account Manager Chris Bolender.  (See Powell Aff. at ¶ 12; Bolender Aff. at ¶ 9; Bolender Aff. Ex. B).

Upon receipt of the e-mail, Bolender contacted Powell and asked him how he determined what patrols Plaintiff had performed. (Bolender Aff. at ¶ 10; Powell Aff. at ¶ 13.)  Powell explained that Plaintiff had parked the patrol cart at the loading dock for the Madisonville Facility in view of the security cameras for the site and that he could determine from the video footage what periods of time the cart was on patrol and what periods of time the cart remained parked at the loading dock.  *Id.*

After talking with Powell, Bolender personally reviewed the video footage and confirmed that the footage showed Plaintiff on cart patrol for only 67 minutes of her 8-hour shift. (Bolender Dec. at ¶ 11.).  Bolender also reviewed Plaintiff's DAR and determined that she had falsified her DAR.  *Id.*  Specifically, Bolender determined that, based on the video footage, Plaintiff had not performed all of the cart patrols she claimed to have performed in her DAR.  *Id.*  The video footage showed that Plaintiff only performed a total of four cart patrols during her shift. (Bolender Aff. at ¶ 12.)   All of the patrols were less than the required 30 minutes each.  *Id.*

AlliedBarton maintains Disciplinary Matrix Guidelines to ensure the consistent application of discipline.  (See Bolender Aff. at ¶ 15; Bolender Aff. Ex. D.)  Pursuant to

5

the Guidelines, intentional falsification of information (such as a DAR) is grounds for termination of employment for a first offense. *Id.* After reviewing Plaintiff's DAR and the video footage, Bolender determined that Plaintiff had falsified her DAR. *Id.* Consistent with AlliedBarton's Disciplinary Matrix Guidelines, Bolender made the decision to terminate Plaintiff's employment. *Id.* On May 6, 2011, Bolender met with Plaintiff and informed her that her employment was being terminated. (Bolender Aff. at ¶ 19.). During the meeting, Bolender provided West with a copy of a Disciplinary/Counseling Statement explaining the grounds for her termination. (Bolender Aff. at ¶ 19; Ex. E). At the time Bolender made the decision to terminate Plaintiff's employment, he was not aware that Plaintiff had made a complaint about a former Madisonville Facility Account Manager named Cynthia Stark in 2006.[4]

Thereafter, Plaintiff filed a Charge of Discrimination against AlliedBarton with the Equal Employment Opportunity Commission on May 10, 2011. (*See* Pl. Dep. at 46:17-47:20; Doc. 5 at 5). On her Charge of Discrimination, Plaintiff marked the boxes indicating that she had been retaliated against and discriminated against on the basis of her sex and alleged disability. (Doc. 5 at 5). Thereafter, Plaintiff filed the instant action

---

[4] In November 2006, Cynthia Stark, Plaintiff's Account Manager at the time, allegedly told her that, as an African-American woman, Plaintiff could not have blonde streaks in her hair. (Doc. 43 at 203:4-206:2.) Plaintiff complained to Stark about her comment. *Id.* at 209:7-19. Thereafter, Plaintiff was contacted by three different AlliedBarton representatives, each of whom apologized on behalf of the Company for Stark's remark. *Id.* at 211:6-216:7. AlliedBarton representatives also told Plaintiff that she did not need to change her hair color and that she was welcome to contact them with any concerns she had. (Id.) AlliedBarton representatives also asked Plaintiff what, if anything, she wanted the Company to do regarding Stark's remark. In response, Plaintiff told them she did not want Stark to be disciplined or removed from her position. Rather, Plaintiff asked only that Stark be "educated" about the hair color rule.

asserting that AlliedBarton and two of its employees terminated her employment with AlliedBarton in violation of Title VII, 42 U.S.C. 2000e-5(f).[5]

## II. Analysis

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[5] The individual defendants were dismissed from this action on March 12, 2012. (Doc. 30).

7

*Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support his claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

In this case, Plaintiff has failed to present anything more than her own conclusory allegations in support of her claims. Plaintiff has not provided any affidavits, deposition testimony, or other evidence in opposition to Defendants' motions for summary judgment as required under Rule 56. *See Anderson*, 477 U.S. at 252.

**B. Defendants' Motions for Summary Judgment**

As detailed above, Plaintiff's complaint alleges that Defendants discriminated and retaliated against her due to her race, sex and alleged disability in violation of Federal law. Defendants AlliedBarton and Fifth Third now move for summary judgment. Defendants argue, *inter alia*, that Plaintiff cannot establish a *prima facie* case of discrimination. Plaintiff failed to timely respond to the motions for summary judgment and on the Court ordered Plaintiff to show cause, in writing and within 15 days why the motions should be granted. In response to the Show Cause Order, Plaintiff filed a one page document which states, *in toto*:

> I still believe that it is necessary for 53rd to also be responsible for its contractors they hire and it was Allied Barton but at 53rd. and the fact that its 2013 and discrimination still exist. I believe that 53rd and also Allied Barton needs this very serious situation to be address all the way to the Court room so that in the further 53rd will screen and monitor all aspects of its obligations when it comes to equality, and discrimination and retaliation.

(Doc. 54)

a. *Race[6] and Sex Discrimination*

Title VII makes it unlawful for an employer to discharge an individual or to otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race or gender. 42 U.S.C. § 2000e-2(a)(1). An employee may base his claim of employment discrimination on a theory of disparate impact or disparate treatment or both. *Lynch v. Freeman*, 817

---

[6] Plaintiff did not exhaust her administrative remedies with regard to her race claim prior to filing suit. "It is well-settled that federal courts do not have subject matter jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge." *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 379 (6th Cir. 2002). In her EEOC charge, Plaintiff did not check the box indicating that she had been discriminated against on the basis of her race nor did she mention her race or race discrimination in any way in the particulars of her charge. (Doc. 48, ¶¶ 113-115.)

F.2d 380, 382 (6th Cir. 1987). In the instant case, Plaintiff is purportedly proceeding under the disparate treatment theory of discrimination. Under the disparate treatment theory, the plaintiff must show that the employer has treated some people less favorably than others because of their race, color, religion, sex or national origin. Unlike the disparate impact theory, proof of discriminatory motive is critical in the case of disparate treatment. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 92 (6th Cir. 1982) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Claims of disparate treatment are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002); *Mitchell*, 964 F.2d at 582. The *McDonnell Douglas* burden-shifting analysis requires that plaintiff first establish a *prima facie* case of discrimination. *Id.*

A plaintiff may establish a *prima facie* discrimination claim by either direct or circumstantial evidence. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). "Direct evidence of discrimination is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc). "Circumstantial evidence, on the other hand, is proof that does not on its face establish discriminatory animus, but does allow a fact-finder to draw a reasonable inference that discrimination occurred." *Id.*

A plaintiff who lacks direct evidence of discrimination may establish a *prima facie* case of race or sex discrimination through circumstantial evidence by showing that: 1)

he is a member of a protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost; and 4) she was replaced by an individual outside the protected class. *Mitchell,* 964 F.2d at 582. Plaintiff may also establish the fourth prong of a *prima facie* case of discrimination by showing that she was treated less favorably than a similarly-situated individual outside the protected class. *See Clayton v. Meijer, Inc.,* 281 F.3d 605, 610 (6th Cir. 2002).

The employer is entitled to summary judgment if the plaintiff does not establish a *prima facie* case. If the plaintiff establishes a *prima facie* case, the employer can overcome the *prima facie* case by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas,* 411 U.S. at 802. If the employer carries its burden, the plaintiff must show that the reasons offered by the employer were not its true reasons, but were a pretext for discrimination. *Id.* at 804.

At the outset, the Court finds that Fifth Third is entitled to judgment as a matter of law because Plaintiff has failed to establish that Fifth Third was her employer as required to bring a discrimination claim under Title VII. 42 U.S.C. § 2000e-2(a)(1). See also *Baetzel v. Home Instead Senior Care*, 370 F. Supp. 2d 631, 639 (N.D. Ohio) ("Establishing a *prima facie* case under Title VII . . . requires [Plaintiff] to show, as a threshold matter, that [the Defendant Company] functioned as her employer."). As noted above, it is undisputed that Fifth Third did not employ Plaintiff nor did Fifth Third have any involvement in Plaintiff's employment with AlliedBarton. (Doc. 49, Mahon Aff. ¶¶10-14). Accordingly, Plaintiff's claims against Fifth Third fail as a matter of law.

With respect to Plaintiff's claims against AlliedBarton, Plaintiff has not provided any evidence to satisfy the second and/or fourth prongs of a *prima facie* case of race and/or sex discrimination. Notably, with respect to the second prong, to demonstrate that she was qualified, Plaintiff "must prove that she was performing her job at a level which met her employer's legitimate expectations." *Meadows v. Ford Motor Co.*, 21 F. App'x 302, 304 (6th Cir. 2001) (citations omitted). *See also See Powell v. Syracuse Univ.*, 580 F.2d 1150, 1155 (2d Cir. 1999) (to demonstrate that he was qualified for the job, a plaintiff must show that he was qualified for the position at the time of the discharge, regardless of whether he had performed the position satisfactorily in the past).

Plaintiff has placed nothing in the record to contradict Defendant AlliedBarton's evidence that she was not performing her job satisfactorily. As noted above, it is undisputed that Plaintiff did not perform the required number of cart patrols during her shift on May 4 and 5, 2011. Plaintiff's only duty during the relevant time was performing cart patrol. Plaintiff has also failed to identify any other similarly situated employees in a non-protected class who were treatment more favorably than Plaintiff. Accordingly, the undersigned finds that Plaintiff has failed to establish a *prima facie* case of race and/or sex discrimination. Defendant is therefore entitled to summary judgment on Plaintiff's race and sex discrimination claims on this basis.

Assuming, *arguendo*, that Plaintiff has come forward with sufficient evidence to establish a *prima facie* case of race and/or sex discrimination, AlliedBarton has articulated a legitimate, non-discriminatory reason for the decision to terminate Plaintiff's

12

employment, *i.e.* her failure to perform her job duties and Plaintiff has failed to provide any evidence of pretext.

### b. Disability Discrimination

Title I of the ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a prima facie case of employment discrimination through indirect evidence under Title I, a plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir.2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir.1996)).

Here, Plaintiff has failed to produce any evidence that she suffers from a disability as defined by the ADA. Thus, to the extent that Plaintiff is asserting claims under the ADA, AlliedBarton is entitled to judgment as a matter of law as to those claims.

### c. Retaliation

Plaintiff further alleges that Defendants unlawfully retaliated against her for a complaint she made against Ms. Stark in 2006. In order to establish a *prima facie* case

of retaliation Plaintiff must show the following: 1) she engaged in protected activity; 2) the exercise of her protected rights was known to the defendant; 3) the defendant subsequently took employment action against the plaintiff that a reasonable employee would have found materially adverse; and 4) there exists a causal connection between the protected activity and the adverse employment action. *Hale v. Village of Madison*, 493 F. Supp. 2d 928, 938 (N.D. Ohio 2007).

Based on the record currently before the Court, the undersigned finds that Plaintiff has failed to show that AlliedBarton was aware of her protected activity and that there was a causal connection between her protected active and her termination. As such, Plaintiff cannot establish a *prima facie* case of retaliation.

Notably, Plaintiff purportedly alleges that Stark was later terminated as a result of her Complaint and that Vance Turner sought to retaliate against Plaintiff because of Stark's termination. (Doc. 43. at 202:7-12.). However, the evidence establishes that Stark voluntarily resigned her position as the Account Manager in late March 2007 because the job required her to work more hours than she wanted. (Doc. 49 ¶¶ 88-90.) After resigning her Account Manager position, Stark continued working for the Company as a Site Supervisor at another worksite for more than a year. *Id.* ¶ 91. Moreover, Chris Bolender, the individual who made the decision to terminate her employment, was not even aware of the complaint she made against Stark in 2006. (Doc. 49, Ex. 2, Bolender Aff.). In light of the foregoing, AlliedBarton is entitled to judgment as a matter of law with respect to Plaintiff's claim of retaliation.

### III. Conclusion

For these reasons, the Court hereby **RECOMMENDS** that the Defendants motions for summary judgment (Docs. 44, 47) be **GRANTED** and this matter be **TERMINATED** on the active docket of the Court.

 s/ Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DENICE WEST,

        Plaintiff,                                   Case No. 1:11-cv-547

v.                                                  Dlott, J.
                                                      Bowman, M.J.

FIFTH THIRD CORP. *et al*,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).